[Cite as *State v. Norvell*, 2024-Ohio-4443.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-05-071 |
| | : | O P I N I O N |
| - vs - | | 9/9/2024 |
| | : | |
| WILLIAM C. NORVELL, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM MIDDLETOWN MUNICIPAL COURT
Case No. CRB0000932

Ashley M. Bretland, City of Middletown General Counsel, for appellee.

Lyons & Lyons Co. LPA, and Jonathan N. Fox, for appellant.

**S. POWELL, P.J.**

{¶ 1} Appellant, William C. Norvell, appeals the decision of the Middletown Municipal Court denying his motion to seal the record of his conviction for fourth-degree misdemeanor disorderly conduct.[1] For the reasons outlined below, we reverse the trial

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this appeal from the accelerated calendar for purposes of issuing this opinion.

court's decision and remand this matter to the trial court for further proceedings.

**Facts and Procedural History**

{¶ 2}   On April 6, 2020, a complaint was filed with the trial court charging Norvell, then a member of the Madison Local School District Board of Education, with one count of first-degree misdemeanor domestic violence in violation of R.C. 2919.25(A).

{¶ 3}   The charge arose after Norvell's then wife, now ex-wife, Tracy, alleged that Norvell had punched her in the face and abdomen, kicked her, and pulled her around by the hair during an altercation at their Middletown home on the morning of April 5, 2020.[2] Tracy also alleged that Norvell had grabbed a belt and threatened to "beat" her "all day." This was in addition to Tracy alleging Norvell had told her he was going pay $10,000 to a group of "Mexicans" to "rape" her.  Tracy alleged that Norvell's attack eventually stopped when she was able to escape from the house with her young son and run to a neighbor's house to call the police.  A police report generated following this incident notes that Tracy exhibited minor injuries to her person following this alleged incident in the form of bruises on her eye and leg.

{¶ 4}   On April 23, 2020, Norvell entered into a plea agreement with the state. Pursuant to the terms of that plea agreement, Norvell thereafter plead guilty to an amended charge of fourth-degree misdemeanor disorderly conduct in violation of R.C. 2917.11(A).  The trial court accepted Norvell's guilty plea and sentenced him to a suspended 30-day jail sentence conditioned upon Norvell having "no reappearance in court for 2 years."  The trial court also ordered Norvell to pay a $100 fine plus court costs. The record indicates that Norvell has since paid his fine and court costs and that Norvell has otherwise been subject to a final discharge after having made no reappearance

_____

2. This court has changed the name of Norvell's then wife, now ex-wife, for purposes of issuing this opinion.

before the trial court, or any other court, in the two years following his conviction.

{¶ 5} On May 23, 2022, Norvell filed an application to have the record of his disorderly conduct conviction sealed. The trial court held a hearing on Norvell's application on July 20, 2022. Following this hearing, on August 12, 2022, the trial court issued an entry denying Norvell's application to seal his record. In so holding, the trial court stated:

> The probation department interviewed Mr. Norvell when preparing the report concerning his application. During the course of the interview, Mr. Norvell repeatedly minimized his own conduct, which resulted in the original criminal charges. He also criticized his ex-wife for "blowing things out of proportion." Although he accepted legal responsibility for his behavior by pleading guilty to a charge of disorderly conduct, his statements to the probation department and his letter to the court express a lack of remorse for his actions leading up to the criminal charge. The Court believes that a lack of remorse and failure to take responsibility for past crimes goes to the issue of rehabilitation. At this time, the Court is not satisfied that Mr. Norvell has been sufficiently rehabilitated.

The trial court then concluded by noting that, because Norvell was an eligible offender who could apply to have the record of his disorderly conduct conviction sealed, Norvell could "certainly reapply for the sealing of the record in the future after taking appropriate rehabilitative actions."

{¶ 6} Just over 14 months later, on October 23, 2023, Norvell filed a renewed application to have the record of his disorderly conduct conviction sealed. The state did not file any objection to Norvell's application. Nevertheless, although the state did not file an objection, the victim, Norvell's ex-wife, Tracy, did.[3] The record indicates that Tracy submitted her objection to the trial court in the form of a letter dated February 20, 2024.

---

3. Norvell claims that the objection filed by the victim, his ex-wife, Tracy, is not part of the record. The record properly before this court does not support this assertion as this court is in possession of a scanned copy of Tracy's objection that she submitted to the trial court.

Within her objection, Tracy initially stated, in pertinent part, the following:

Is it fair to ask me to address this issue? Is it right for the responded (sic) and his counsel to request for the charge against Mr. Norvell, in which he pleaded guilty to be expunged? Should someone who finally escaped . . . give reasons to why someone should be held accountable for their wrongdoings? Is it?

I don't know, maybe it is. Maybe to someone who hasn't been punched in the head, kicked in the ribs, pulled down a hallway of a 5000 sq [foot] house by their hair. Beaten with a belt or have someone put all their weight on your knee to hold you down. Maybe to those individuals that has not experience[d] it, it is. But as a Domestic Violence Survivor, who was abused by this man for 8 long years, I question how is this fair?

It's another win for the abuser and another loss for the victim.

{¶ 7} Continuing, Tracy stated within her objection:

On April 5, 2020, Mr. Norvell was arrested for Domestic Violence! And with the same reasons he's giving you now, I agreed to lessen the charge to disorderly conduct. Now, like in Mr. Norvell's mind he wants to be found innocent and have it completely removed because he cannot admit the years of abused (sic) happened in the first place.

Obviously, this is not an easy decision for you to make and I truly appreciate you wanting me to express [my] thoughts. But my thoughts are always going to be the same. I'm a survivor and he is an abuser, an abuser that should be held accountable; not given an open invitation to get away with his crime.

{¶ 8} Concluding, Tracy stated within her objection:

I ask that this never be removed from Mr. Norvell's record. Not just for me, but also for my daughter [redacted] who needs to know a man should never hit a woman, and if he does then he should be held accountable; and my son [redacted]; which I share with Mr. Norvell.[4] Our son [redacted] was there on April 5, 2020. He tried to save me that day. At 4 years old [redacted] stood up to his dad. [Redacted] started throwing match box cars and hitting him, screaming get off my mommy,

---

4. This court has redacted the names of the two children referred to in Tracy's objection in an effort to protect their identities.

as he watched his dad beat me, kick me and strangle me. If [redacted] wouldn't have stepped in to fight for me, if we wouldn't have got away and ran next door screaming for help, if [redacted] wouldn't have exposed the abuse to the neighbors by telling them he was trying to kill his mom, and that he's beating her with a belt, I truly don't know if I would have escaped this nightmare.

{¶ 9} On February 28, 2024, the trial court held a hearing on Norvell's renewed application to have the record of his disorderly conduct conviction sealed. During this hearing, the trial court heard arguments from Norvell's counsel and from Norvell himself as to why they believed Norvell's record should be sealed. As part of these arguments, Norvell advised the trial court that he was requesting to have his record sealed because "[i]t's just to the point that its (sic) effecting my life and my business and my children's life because when you google my name something comes up that's not true about me." Norvell also advised the trial court as follows:

I have a foundation that I started two years ago and we help a lot of kids we are very well known in the Madison school district and that's not what I want my name to be associated with it's definitely . . . [Tracy] and her daughter which is my former step-daughter plays on my soccer team, I took her to soccer training all winter she comes to my house she's still welcome in my home when I visit her home I go back in my son's bedroom it's just the letter is not consistent with what has happened and there wasn't a problem even after the incident we had continued all the way up until June of that year we were together. When we decided to call it splits and I moved on with my life and I got a girlfriend thing's changed and it's been that way since it's just not consistent and it does affect my life not only my business but personal and I just . . .I want it off my record it just doesn't look good for me or my family or my children they get harassed at school about it.

{¶ 10} On April 15, 2024, the trial court issued a decision denying Norvell's renewed application to have the record of his disorderly conduct conviction sealed. In so doing, the trial court initially noted:

Mr. Norvell has argued that the presence of the record of conviction continues to affect his life and business. He stated,

- 5 -

"It doesn't look good for me." In support of his motion, Mr. Norvell has submitted numerous letters from friends and family who would attest to his good character. These letters confirm that he has continued to be active in his children's lives and in his community by coaching youth soccer and other volunteer opportunities. To counter the victim's objection, he has introduced their complete history of text message communications over the past four years. He argues that the messages prove that Ms. Norvell does not fear him.

{¶ 11} Continuing, the trial court then noted:

The documentation provided by Mr. Norvell establishes that he is able to operate his own business and volunteer in the community even with the record of the conviction. Apart from that statement that, "It doesn't look good for me," Mr. Norvell has not demonstrated how the record of conviction is detrimental to him. In contrast, when a motion to seal is granted, R.C. §2953.32(D)(2)(b) demands that, "[t]he proceedings in the case that pertain to the conviction or bail forfeiture shall be considered not to have occurred[.]" This outcome would clearly cheapen Ms. Norvell's right to justice as protected by the Ohio Constitution.

The trial court reached this decision upon finding the wishes of the victim, Norvell's ex-wife, Tracy, were at least "entitled to equal weight" under the law to that of the offender, Norvell.

{¶ 12} On May 8, 2024, Norvell filed a notice of appeal from the trial court's decision. Following briefing, Norvell's appeal was submitted to this court for decision on August 7, 2024. Norvell's appeal now properly before this court for decision, Norvell has raised two assignments of error for review. For ease of discussion, we review Norvell's two assignments of error together.

**Assignment of Error No. 1:**

{¶ 13} THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING WILLIAM NORVELL'S APPLICATION TO SEAL HIS RECORD OF CONVICTION.

**Assignment of Error No. 2:**

{¶ 14} THE COURT ABUSED ITS DISCRETION BY REQUIRING MR. NORVELL TO PROVE THE RECORD OF HIS CONVICTION HAD A DETRIMENTAL EFFECT ON HIS LIFE AND BUSINESS.

{¶ 15} In his first assignment of error, Norvell argues the trial court erred by denying his renewed application to have the record of his disorderly conduct conviction sealed. In his second assignment of error, Norvell argues the trial court erred by requiring him to prove that his disorderly conduct conviction had a "detrimental effect" on his life and business as a prerequisite to having the record of his disorderly conduct conviction sealed.

*Applications to Seal the Record of an Offender's Conviction*

{¶ 16} "A person convicted of a crime has no substantive right to have the record of that conviction sealed." *State v. Cruz*, 2012-Ohio-4241, ¶ 25 (12th Dist.), citing *State v. V.M.D.*, 2016-Ohio-8090, ¶ 13. The sealing of the record of an offender's conviction is instead "'an act of grace created by the state.'" *State v. Puckett*, 2021-Ohio-2634, ¶ 7 (12th Dist.), quoting *State v. Hamilton*, 75 Ohio St.3d 636, 639, 1996-Ohio-440. The sealing of a record of an offender's conviction is therefore "a privilege, not a right." *State v. Boykin*, 2013-Ohio-4582, ¶ 11. "R.C. 2953.32 governs a trial court's decision to grant or deny an application to seal a record of conviction." *State v. J.B.*, 2024-Ohio-1879, ¶ 15 (1st Dist.).

{¶ 17} Pursuant to R.C. 2953.32(B)(1), an "eligible offender"[5] who was convicted of an offense in Ohio may apply to the sentencing court for the sealing of the record of

---

5. The term "eligible offender" as used in R.C. 2953.32 had previously been defined by statute. More specifically, through the statutory language found in the former R.C. 2953.31. *See* former R.C. 2953.31(A)(1) (effective April 7, 2021 to April 3, 2023). However, the statutory definition of who constituted an "eligible offender" under R.C. 2953.32 was removed from R.C. 2953.31 through the General Assembly's passage of 2022 Am.Sub.S.B. No. 288 effective April 4, 2023.

his or her conviction.[6]   This applies to all convictions except for those listed in R.C. 2953.32(A).   The list of excepted convictions set forth in that statute does not include convictions for misdemeanor disorderly conduct in violation of R.C. 2917.11(A).   Rather, the list of excepted conviction includes:

> (1) Convictions under Chapter 4506., 4507., 4510., 4511., or 4549. of the Revised Code, or a conviction for a violation of a municipal ordinance that is substantially similar to any section contained in any of those chapters;
>
> (2) Convictions of a felony offense of violence that is not a sexually oriented offense;
>
> (3) Convictions of a sexually oriented offense when the offender is subject to the requirements of Chapter 2950. of the Revised Code or Chapter 2950. of the Revised Code as it existed prior to January 1, 2008;
>
> (4) Convictions of an offense in circumstances in which the victim of the offense was less than thirteen years of age, except for convictions under section 2919.21 of the Revised Code;
>
> (5) Convictions of a felony of the first or second degree or of more than two felonies of the third degree; and
>
> (6) Convictions for a violation of section 2919.25 or 2919.27 of the Revised Code or a conviction for a violation of a municipal ordinance that is substantially similar to either section.

{¶ 18} An application for sealing a misdemeanor conviction may generally be made at any time after the expiration of one year following the offender's final discharge. R.C. 2953.32(B)(1)(a)(ii).   However, regardless of when the offender's application was filed, once an application to seal the record of the offender's conviction has been made, the trial court is required by R.C. 2953.32(C) to set a date for a hearing on the offender's

---

6. We note that, as is now well established, "[t]he statutory law in effect at the time of the filing of an R.C. 2953.32 application to seal a record of conviction is controlling." *State v. Hart*, 2022-Ohio-1706, ¶ 7 (12th Dist.), citing *State v. LaSalle*, 2002-Ohio-4009, paragraph two of the syllabus.  The version of R.C. 2953.32 applicable to this case became effective on October 3, 2023 through the General Assembly's passage of 2023 Am.Sub.H.B. No. 33.

application. That statute also requires the trial court to notify the prosecutor for the case of the hearing date not less than 60 days prior to when the hearing is to take place. The trial court must then hold a hearing on the matter at least 45 days, but not more than 90 days, from the date that the application to seal the record of the offender's conviction was filed. R.C. 2953.32(C).

{¶ 19} At the hearing held on the offender's application required by R.C. 2953.32(C), the trial court is required by R.C. 2953.32(D)(1) to make "several factual and legal determinations." *State v. Hufford*, 2024-Ohio-2667, ¶ 14 (12th Dist.). This includes the trial court determining whether the offender was requesting to have his or her record sealed as to one of the prohibited offenses listed in R.C. 2953.32(A). R.C. 2953.32(D)(1)(a). The trial court is also required to determine whether the offender's application was made at the appropriate time as specified by R.C. 2953.32(B)(1)(a), whether any criminal proceedings were then pending against the offender, and whether the offender had "been rehabilitated to the satisfaction of the court." R.C. 2953.32(D)(1)(a), (b), and (c). This is in addition to R.C. 2953.32(D)(1) requiring the trial court to consider any objections to the offender's application that had been filed by the prosecutor and/or the victim and to weigh the offender's interests in having the record of his or her conviction sealed "against the legitimate needs, if any, of the government to maintain those records." R.C. 2953.32(D)(1)(e), (f), and (g). It is only then, after the trial court has satisfied its duties under R.C. 2953.32(D)(1), that the trial court may come to a decision on the offender's application. *Hufford* at ¶ 15.

{¶ 20} When making this determination, "[t]he burden is on the applicant to demonstrate that [his or] her interests 'are at least equal to the governmental interests before the trial court must determine if sealing the record would be appropriate.'" *H.M.G.*, 2023-Ohio-4588 at ¶ 17, quoting *State v. Haney*, 70 Ohio App.3d 135, 139 (10th

- 9 -

Dist.1991). The offender can generally satisfy this burden by presenting evidence demonstrating that the record of his or her conviction has damaged the offender's ability to earn a living. *State v. R.S.*, 2022-Ohio-1108, ¶ 26 (1st Dist.); *State v. Shaffer*, 2010-Ohio-6565, ¶ 30 (11th Dist.). The offender, prior to having the record of his or her conviction sealed by the trial court, also carries the burden of demonstrating that he or she has been rehabilitated to the trial court's satisfaction. *State v. J.L.*, 2019-Ohio-681, ¶ 9 (10th Dist.). "Evidence of rehabilitation normally consists of an admission of guilt and a promise to never commit a similar offense in the future, or good character or citizenship in the community since the conviction." *State v. Evans*, 2013-Ohio-3891, ¶ 11 (10th Dist.).

{¶ 21} If the trial court determines, after complying with the requirements found in R.C. 2953.32(D)(1) set forth above, that the offender is entitled to have the record of his or her conviction sealed because:

> (1) the offender is not pursuing sealing a conviction of an offense that is prohibited under R.C. 2953.32(A);
>
> (2) the application was made at the time specified in division R.C. 2953.32(B)(1)(a) or (b);
>
> (3) no criminal proceeding is then pending against the applicant;
>
> (4) the interests of the applicant in having the records pertaining to his or her conviction sealed are not outweighed by any legitimate governmental needs to maintain those records; and
>
> (5) the rehabilitation of the applicant has been attained to the satisfaction of the court;

the trial court is then mandated by R.C. 2953.32(B)(2)(a) to order all official records of the case that pertain to the subject conviction sealed and all index references to the case that pertain to the conviction deleted.

{¶ 22} The effect of a trial court granting the offender's application to seal the

record of his or her conviction is set forth in R.C. 2953.32(B)(2)(b), which provides that, "[t]he proceedings in the case that pertain to the conviction . . . shall be considered not to have occurred and the conviction . . . of the person who is the subject of the proceedings shall be sealed if the application was for sealing . . . ." This holds true so long as the offender is not convicted of any subsequent offense(s). This is because, as R.C. 2953.32(B)(2)(b) also provides, "a sealed record of prior conviction . . . may be considered by the court in determining the sentence or other appropriate disposition . . . ." This, as set forth in R.C. 2953.32(B)(2)(b), includes the relief provided for in R.C. 2953.31, 2953.32, and 2953.34.

*Abuse of Discretion Standard of Review*

{¶ 23} "The decision to grant an application to seal records rests within the sound discretion of a trial court that must balance several factors in determining whether sealing the record is proper." *State v. Niesen-Pennycuff*, 2011-Ohio-2704, ¶ 26 (12th Dist.). Thus, given the discretion afforded to a trial court when ruling on an offender's application to seal the record of his or her conviction, "[w]e review a trial court's decision granting or denying an application to seal a criminal record for an abuse of discretion." *State v. Long*, 2015-Ohio-821, ¶ 8 (12th Dist.).

{¶ 24} "An abuse of discretion connotes that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment." *State v. Byrum*, 2013-Ohio-533, ¶ 8 (12th Dist.). "A decision is unreasonable where a sound reasoning process does not support it." *State v. Miller*, 2016-Ohio-7360, ¶ 7 (12th Dist.). "[A]n 'arbitrary' decision is one made 'without consideration of or regard for facts [or] circumstances.'" *State v. Beasley*, 2018-Ohio-16, ¶ 12, quoting Black's Law Dictionary 125 (10th Ed.2014). "An unconscionable decision may be defined as one that affronts the sense of justice, decency, or reasonableness." *State v. Longworth*, 2021-

- 11 -

Ohio-4538, ¶ 26 (12th Dist.).

**{¶ 25}** When applying the abuse of discretion standard, this court may not substitute its judgment for that of the trial court. *State v. Haddix*, 2012-Ohio-2687, ¶ 10 (12th Dist.). Therefore, because this court may not substitute its judgment for that of the trial court, we must give "great deference" to the trial court on questions of whether an offender seeking to have the record of his or her conviction sealed had been rehabilitated to the satisfaction of the court, and whether the offender's interest in having his or her record sealed was outweighed by the legitimate needs of the government to maintain the record. *State v. Schuster*, 2013-Ohio-452, ¶ 19 (12th Dist.).

*Norvell's Argument and Analysis*

**{¶ 26}** To support his two assignments of error, Norvell argues it was error for the trial court to deny his renewed application to have the record of his disorderly conduct conviction sealed because he (1) "met all the statutory requirements" set forth in R.C. 2953.32(D)(1) that the court was to determine, consider, or weigh in its assessment of whether to grant or deny his request; and because he (2) "presented uncontroverted evidence that he had been satisfactorily rehabilitated." Norvell also argues the trial court erred by requiring him to establish that his disorderly conduct conviction had a "detrimental effect" on his life and business as a prerequisite to having the record of his disorderly conduct conviction sealed. To support this claim, Norvell argues that because there is "no requirement" set forth in R.C. 2953.32(D)(1) that mandated him to demonstrate the extent to which the record of his disorderly conduct conviction had been detrimental on his life and business before the record of his disorderly conduct conviction could be sealed, the trial court abused its discretion by imposing such a requirement on him in this case.

**{¶ 27}** However, rather than specifically addressing either of Norvell's two

arguments set forth above, we find this matter must be reversed and remanded to the trial court for further proceedings. This is because, as a simple review of the record reveals, the trial court failed to satisfy each of its duties under R.C. 2953.32(D)(1) before reaching its decision to deny Norvell's renewed application to have the record of his disorderly conduct conviction sealed. That is to say, although referring to the fact that it was Norvell who had the burden of proving his interests in having the record of his conviction sealed were "at least equal" to the governmental interests, if any, in having the record remain unsealed, the trial court failed to ever actually weigh those two competing interests as required by R.C. 2953.32(D)(1)(f) prior to reaching its decision to deny Norvell's request. The trial court instead conflated the weighing of those interests with the requirement set forth in R.C. 2953.32(D)(1)(e), the provision that mandates the trial court "[c]onsider the reasons against granting the application specified by the victim" if the victim, pursuant to the Ohio Constitution, objected to the unsealing of the offender's record. This matter must therefore be reversed and remanded to the trial court for further proceedings.

{¶ 28} In so holding, we note our appreciation for the attempt made by the trial court to adhere to the requirement set forth in R.C. 2953.32(D)(1)(e) mandating it consider the reasons that the victim, Norvell's ex-wife, Tracy, objected to the court granting Norvell's request to have the record of his disorderly conduct conviction sealed, along with the requirement set forth in R.C. 2953.32(D)(1)(f) directing it to weigh the offender's interests in having the record of his or her conviction sealed "against the legitimate needs, if any, of the government to maintain those records." The reference to the Ohio Constitution set forth within R.C. 2995.32(D)(1)(e) is in regard to Marsy's Law, Article I, Section 10a. Marsy's Law affords crime victims certain rights that are to be "protected in a manner no less vigorous than the rights afforded to the accused . . . ." These rights

include, but are not limited to, the right "to be treated with fairness and respect for the victim's safety, dignity and privacy," as well as the right "to be heard in any public proceeding involving release, plea, sentencing, disposition, or parole, or in any public proceeding in which a right of the victim is implicated . . . ." We do this because, unlike what Norvell suggests within his appellate brief, the General Assembly cannot usurp the clear mandate provided by the Ohio Constitution via Marsy's Law, Article I, Section 10a.

{¶ 29} Upon remand, the trial court must comply with the requirements set forth in R.C. 2953.32(D) and engage in the appropriate statutory analysis as set forth therein. It is only then, after the trial court has satisfied its duties under R.C. 2953.32(D), that the trial court may come to a decision on Norvell's motion. Once that decision is made, the trial court shall then issue a written judgment entry that provides sufficient explanation of its reasoning and rationale to allow this court to conduct a meaningful review of the matter should the court's decision again be appealed. In so doing, we note that there is, in fact, no requirement set forth within the plain language of R.C. 2953.32(D)(1) that mandated Norvell to demonstrate the extent to which the record of his disorderly conduct conviction had been detrimental on his life, his children's lives, and/or his business before the record of his conviction could be sealed by the trial court. To the extent that the trial court held otherwise, such decision was error and shall not be replicated again upon this court's remand. Therefore, finding it necessary that this matter be reversed and remanded to the trial court for further proceedings, Norvell's two assignments of error have merit and are sustained.

{¶ 30} Judgment reversed and remanded.

M. POWELL and BYRNE, JJ., concur.

- 14 -